UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Respondent,<br><br>   v.<br><br>SNO H. RUSH,<br><br>      Defendant/Petitioner. | Criminal Action No. 10-00246 (CKK)<br>Civil Action No. 12-00285 (CKK) |

MEMORANDUM OPINION
(December 26, 2012)

On October 12, 2010, Defendant Sno H. Rush ("Rush"), a former employee of the United States Marshals Service ("USMS"), pleaded guilty before this Court to one count of conversion in violation of 18 U.S.C. § 641, in connection with her personal use of $104,000 in USMS funds. On May 9, 2011, this Court sentenced her to twenty-one months of imprisonment to be followed by thirty-six months of supervised release and to $104,100 in criminal monetary penalties in the form of restitution and a special assessment. Presently before the Court is Rush's [28/34][1] Motion for Modification of the Imposed Sentence/Motion to Vacate under 28 U.S.C. § 2255 ("Motion to Vacate"), by which Rush collaterally attacks her sentence based on various claims of ineffective assistance of counsel. Upon a searching review of the parties' submissions, the relevant authorities, and the record as a whole, the Court finds that Rush is not entitled to the requested relief. Accordingly, the Court shall DENY Rush's [28/34] Motion to Vacate.

---

[1] Unless otherwise indicated, all docket references are to *United States v. Rush*, Criminal Action No. 10-00246 (CKK) (D.D.C.).

## I. BACKGROUND[2]

From October 1998 to November 2008, Rush was employed by the USMS as an administrative officer in the Superior Court for the District of Columbia. In that capacity, Rush's responsibilities included handling payroll-related matters, authorizing payment to employees and outside entities, and drafting and signing United States Treasury checks for expenditures. Between April 2006 and February 2009, Rush converted to her personal use a total of $104,000 in USMS funds. She did so through three basic devices.

First, the USMS assigns each of its official vehicles a Fleet credit card ("Fleet card") to be used for fuel purchases. Fleet cards are not assigned to individual employees, and when a vehicle is sold, the Fleet card assigned to that vehicle must be returned for deactivation. In April 2006, Rush took possession of a Fleet card assigned to a USMS vehicle that was to be sold. Rather than destroying or deactivating the card, Rush took the card home and, between April 2006 and November 2008, used the card to cover personal expenses for gas and other automotive purchases. When the Fleet card expired in November 2008, Rush renewed the card and received a new card. She then used that card from December 2008 to February 2009. Overall, Rush incurred $15,000 in charges, which the USMS paid directly to the credit card company.

Second, using a family member's Social Security Number, Rush created a fictitious employee in the USMS payroll system and converted the salary for that fictitious employee to her own use. Between November 2007 and October 2008, Rush completed false time and attendance records for the fictitious employee and issued United States Treasury checks to the fictitious employee in the total amount of $31,000. The checks were deposited into a bank account that Rush controlled, and she used those funds for personal expenses.

---

[2] Unless otherwise noted, the factual background set forth herein is derived from the [5] Factual Basis for Plea. All dates and monetary amounts are approximations.

Third, Rush was responsible for receiving certain invoices and authorizing payment on behalf of the USMS. From June 2007 to November 2008, Rush issued United States Treasury checks in the total amount of $58,000 and, disguising the credit card payments by creating false invoices to a company in a name similar to Rush's credit card company, used the checks to pay down the balance on her personal credit card account.

The Government commenced this criminal action against Rush on September 9, 2010. On October 12, 2010, Rush pleaded guilty to one count of conversion in violation of 18 U.S.C. § 641 for knowingly converting to her personal use money, valued at more than $1,000, of an agency of the United States. In the plea agreement, the parties stipulated, *inter alia*, that the applicable Sentencing Guideline was U.S.S.G. § 2B1.1, which applies to theft. *See* Plea Agreement, ECF No. [6], ¶ 9. The plea agreement additionally contains provisions setting forth the potential for certain downward departures from the advisory sentence calculated under the Sentencing Guidelines for acceptance of responsibility and/or substantial assistance to the Government, if warranted. *See id*. ¶¶ 9, 12-14.

On May 9, 2011, this Court sentenced Rush to serve twenty-one months of imprisonment to be followed by thirty-six months of supervised release governed by several special conditions, and to pay restitution in the amount of $104,000 and a special assessment in the amount of $100. Judgment in a Criminal Case (May 9, 2011), ECF No. [20]. At sentencing, the Court found by a preponderance of the evidence that, following her guilty plea, Rush engaged in a separate mail and wire fraud scheme against two car insurance companies and was therefore not entitled to a two-level reduction for acceptance of responsibility under the Sentencing Guidelines. *See* Tr. of Sent. Hr'g at 5-11. On June 8, 2011, Rush appealed this Court's Judgment to the United States Court of Appeals for the District of Columbia Circuit. *See* Notice of Appeal, ECF No. [23]. On

August 4, 2011, the appeal was dismissed upon Rush's own motion. *See* Order (Aug. 4, 2011), *United States v. Rush*, No. 11-3053 (D.C. Cir. 2011), ECF No. [27]. At the time Rush filed the instant petition, she was in the custody of the Federal Bureau of Prisons ("BOP"), at the Federal Prison Camp in Alderson, West Virginia. Rush presently remains in BOP custody, in a community-based correctional program in Washington, D.C. *See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, http://www.bop.gov/iloc2/LocateInmate.jsp (last visited December 26, 2012).[3]

On December 8, 2011, Rush, proceeding without legal representation, filed a three-page letter seeking "a modification of the imposed sentence to a reduction or split sentence." *See* Letter to the Court ("Motion for Modification"), ECF No. [28]. On January 20, 2012, the Government filed its response to Rush's Motion for Modification, noting that Rush "does not specify a legal basis to justify a reduction in her sentence." *See* Gov't's Resp. to Def.'s Letter to the Court, ECF No. [30]. By Order dated January 23, 2012, the Court advised Rush that among the legal vehicles available to a federal defendant seeking a modification of her sentence is a petition for habeas relief under Section 2255 of Title 28 of the United States Code. *See* Order (Jan. 23, 2012), ECF No. [31]. However, emphasizing that construing Rush's Motion for Modification as a petition under Section 2255 would trigger significant procedural consequences,

---

[3] Rush is projected to be released from incarceration on December 27, 2012. *See* FEDERAL BUREAU OF PRISONS INMATE LOCATOR, http://www.bop.gov/iloc2/LocateInmate.jsp (last visited December 26, 2012). Because Rush's motion challenges only the length of her term of incarceration, it is arguably soon to be moot, as by December 27, 2012, she will have received the relief specifically requested therein. *See Burkey v. Marberry*, 556 F.3d 142, 146-150 (3d Cir. 2009). However, because Rush remains in BOP custody at the time of this Order, and because the parties briefed the instant motion while Rush was serving her sentence at the Federal Prison Camp in Alderson, West Virginia, the Court will, in an abundance of caution, presume that Rush could show collateral effects from the calculation of her offense level and the length of her sentence, and will therefore evaluate Rush's petition on the merits. *See United States v. McCoy*, 313 F.3d 561, 564 (D.C. Cir. 2002) (en banc).

the Court ordered Rush to "file a document with the Court *specifying any and all legal bases* for her request for a 'modification of the imposed sentence to a reduction or split sentence,' including, but not limited to, indicating whether she intends to bring her request under Section 2255." *Id.*

Rush elected to proceed under Section 2255. On February 13, 2012, still proceeding without legal representation, Rush filed a motion to vacate pursuant to Section 2255. *See* Mot. under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Section 2225 Petition"), ECF No. [34]. In view of the Court's prior instructions to specify "any and all legal bases" for the requested relief, the Court understood Rush's Section 2255 Petition to be a more fulsome statement of her three-page informal Motion for Modification, and, on February 22, 2012, issued an Order consolidating the two motions into a single Motion to Vacate under Section 2255 ("Motion to Vacate"). *See* Order (Feb. 22, 2012), ECF No. [35]. On April 13, 2012, the Government timely filed its opposition to Rush's Motion to Vacate. *See* Gov't's Opp'n to Def.'s Mot. to Vacate ("Gov't's Opp'n"), ECF No. [38]. Rush filed her reply on May 15, 2012. *See* Def.'s Resp. to Opp'n of Motion under 28 U.S.C. § 2255 ("Pet'r's Reply"), ECF No. [39]. Rush's Motion to Vacate is therefore fully briefed and ripe for adjudication.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that the sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §

2255(a).  The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal.  "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982).  Nonetheless, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  However, the decision whether to hold a hearing is entrusted to the district court's discretion, particularly where, as here, the reviewing judge presided over the proceeding in which the petitioner claims to have been prejudiced. *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1131 (1997).  "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion[.]"  Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 4(b).

### III.  DISCUSSION

The Court's discussion here divides into two parts.  The Court shall first explain why Rush's ineffective assistance of counsel claim does not entitle her to relief under 28 U.S.C. § 2255.  Thereafter, the Court shall explain why no Certificate of Appealability shall issue.

**A.  Rush's Ineffective Assistance of Counsel Claims Lack Merit.**

Rush claims that her counsel's performance during the sentencing proceedings before this Court abridged her Sixth Amendment right to effective assistance of counsel, as that right was articulated in *Strickland v. Washington*, 466 U.S. 668 (1984).  "A criminal defendant is as much entitled to effective representation by counsel at sentencing as at any other critical stage of [her]

6

trial." *United States v. Ellerbe*, 372 F.3d 462, 467 (D.C. Cir. 2004) (internal quotation marks and citations omitted).  Nonetheless, to establish a successful claim for ineffective assistance of counsel under *Strickland*, a petitioner must prove both (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [her] prejudice."  *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citing *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008)).

The reviewing court must begin with a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment, *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1403 (2011), and it is the petitioner's burden to show that counsel made errors "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment, *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011).  Even then, the petitioner must further establish prejudice, a showing "[t]hat requires a 'substantial,' not just 'conceivable,' likelihood of a different result."  *Cullen*, 131 S. Ct. at 1403 (quoting *Richter*, 131 S. Ct. at 791).  In the sentencing context, the petitioner's burden of establishing prejudice is "somewhat lighter," but the petitioner must still establish a "reasonable likelihood" that the errors ascribed to her counsel "affected [her] sentence," *United States v. Saro*, 24 F.3d 283, 288 (D.C. Cir. 1994), *cert. denied*, 519 U.S. 956 (1996); *accord United States v. Smith*, 267 F.3d 1154, 1160 (D.C. Cir. 2001).  "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one," *Richter*, 131 S. Ct. at 788, and "[s]urmounting *Strickland's* high bar is never an easy task," *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010) (citations omitted).

Turning to the instant motion, the Court shall note at the outset that nowhere in her briefing does Rush claim that she would not have pled guilty but for her lawyer's alleged

ineffectiveness, or that her plea was in any way less than voluntary. Nor could she, in light of her unequivocal statements on the record regarding the voluntariness of her plea. *See* Tr. of Plea H'rg at 64. Rather, Rush takes issue with the length of her sentence and her understanding of her appellate rights. Specifically, Rush contends that she is entitled to post-conviction relief due to the ineffective assistance of both her trial and appellate counsel on the basis of the following four grounds: (1) trial counsel's failure to secure and adequately explain the terms of the plea agreement, especially those regarding a potential reduction in sentence based upon acceptance of responsibility and substantial assistance; (2) trial counsel's failure to seek a downward departure based upon extenuating circumstances; (3) trial counsel's "deficient performance"; and (4) the failure of both trial and appellate counsel to apprise her of available post-conviction options for legal recourse. For the reasons set forth below, each of these arguments is without merit.[4]

### *1. Alleged failure of trial counsel to secure and explain terms of plea agreement*

First, Rush argues that due to her counsel's "failure to secure and adequately explain terms of [the] plea agreement," Rush was denied a three-level reduction of her sentence based upon acceptance of responsibility and was likewise denied a reduction based upon her alleged substantial assistance to the Government. *See* Mot. to Vacate, at 4-5. As the Government aptly observes, Rush cites no specific action or inaction on behalf of her lawyer that would have resulted in a different sentence. *See* Gov't's Opp'n at 5. Rather, Rush's broad claim that her

---

[4] While the Government's briefing focuses almost exclusively on challenging the merits of Rush's motion, the Government also argues in a footnote that Rush's allegations of ineffective assistance of counsel at sentencing are likely foreclosed by waiver because, pursuant to her plea agreement, Rush expressly waived her right to collaterally challenge her sentence. *See* Gov't's Opp'n at 5-6 n.2 (citing Plea Agreement at 10 & *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994)). The Court harbors misgivings about the enforceability of such a waiver in the context of alleged ineffective assistance of counsel, *cf. United States v. Guillen*, 561 F.3d 527, 529 (D.C. Cir. 2009); *U.S. v. Felder*, 786 F. Supp. 2d 320, 321 (D.D.C. 2011), but ultimately need not reach the issue, as each of Rush's ineffective assistance allegations fails on the merits.

counsel failed to "secure and adequately explain" the terms of her plea agreement is framed in such imprecise and conclusory terms that it is woefully insufficient to overcome the strong presumption that her counsel's legal representation at sentencing was adequate and reasonable. The Court could reject Rush's first ground on this basis alone. *See Simms v. United States*, 730 F. Supp. 2d 58, 61 (D.D.C. 2010) (concluding that "vague and conclusory" allegations that counsel's representation was ineffective are not enough to overcome the strong presumption of effective representation).

Furthermore, Rush's allegations of ineffective assistance with respect to the alleged failure to secure the downward departures to which Rush maintains she was entitled are plainly belied by the record. Regarding any potential reductions based upon Rush's acceptance of responsibility, Rush cannot, in good faith, maintain that due to some unspecified action or omission of counsel, she was deprived of a reduction. To the contrary, Rush has only her own actions to blame. As both the plea agreement and the Court during colloquy made exceedingly clear, the Government was free to oppose any reduction of the Guidelines calculation for acceptance of responsibility if Rush engaged in certain actions prior to sentencing, including engaging in additional criminal conduct. *See* Plea Agreement ¶ 9; Tr. of Plea Hr'g at 42-43. Despite having been so advised, Rush, as the Court found by a preponderance of evidence at sentencing, attempted to commit mail and wire fraud on two automobile insurance companies, GEICO and Erie, in connection with a car accident that occurred after she pleaded guilty. *See* Tr. of Sent. Hr'g at 5-11. Consequently, the Government did oppose, and the Court ultimately declined to grant, a two-point reduction for acceptance of responsibility. *See* Gov't's Sent. Memo., ECF No. [16], at 1-3; Tr. of Sent. Hr'g at 5-11. For this same reason, the Government, in its discretion, chose not to move for the additional one-level reduction for acceptance of

responsibility pursuant to U.S.S.G. § 3E1.1(b). Gov't's Opp'n at 7. *See also* Gov't's Sent. Memo. at 3 & n.2.

In any event, irrespective of whether the Government opposed a reduction for acceptance of responsibility, the Court itself was under no obligation to accept either party's sentencing recommendations. The Court made a pointed effort to explain this to Rush during her plea colloquy, and Rush unequivocally acknowledged her understanding of this fact. *See* Tr. of Plea Hr'g at 41-42, 64. *See also* Plea Agreement ¶ 11 ("It is understood that pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and 11(c)(3)(B) the Court is not bound by the … stipulations [contained within the plea agreement], either as to questions of fact or as to the parties' determination of the applicable Sentencing Guidelines range, or other sentencing issues."). This given, even if Rush had sufficiently alleged objectively unreasonable performance by counsel in connection with the plea agreement and sentencing – which she has not – she fails entirely to show any resulting prejudice. *See Hurt*, 527 F.3d at 1356 (To establish a successful claim for ineffective assistance of counsel under *Strickland*, a petitioner must prove both (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [her] prejudice.") *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citation omitted).

Rush likewise fails to establish ineffective assistance in connection with the Government's decision not to move for a downward departure pursuant to U.S.S.G. § 5K1.1, which permits the Government to file a motion indicating that a defendant has provided substantial assistance in the investigation or prosecution of other criminal matters and recommending that the defendant's sentence be reduced from the advisory sentence suggested by the Sentencing Guidelines. Specifically, Rush alleges, albeit vaguely, that she was "led to

believe she would receive additional reduction for assistance to authorities." Mot. to Vacate at 5. Rush further asserts that she provided assistance through "life-threatening measures" only to be "denied [the] benefits" of downward departure at sentencing. *Id. See also* Pet'r's Reply at 1-2 (detailing alleged efforts to cooperate). However, as the Government most appropriately contends, Rush cannot rely on the claim that her *counsel* was ineffective because the *Government* declined to move for a downward departure based upon Rush's alleged efforts to cooperate. *See* Gov't's Opp'n at 8.

A decision as to whether to file a § 5K1.1 motion is committed to the discretion of the Government. *United States v. Motley*, 587 F.3d 1153, 1159 (D.C. Cir. 2009). To be sure, when a plea agreement provides for it, the Government has a contingent obligation to file a § 5K1.1 motion for substantial assistance if it finds that substantial assistance was in fact provided. *United States v. Jones*, 58 F.3d 688, 691 (D.C. Cir. 1995). Rush's plea agreement contained no such contingency, *see* Plea Agreement ¶¶ 13-14 ("The defendant acknowledges and agrees, however, that nothing in this Plea Agreement may be construed to require the United States to file any such motion(s) and that the United States' assessment of the nature, value, truthfulness, completeness, and accuracy of the defendant's cooperation shall be binding insofar as the appropriateness of the United States' filing of any such motion is concerned."). Further, the record reflects that both Rush's counsel and the Court made every effort to explain this fact. *See, e.g.*, Gov't's Opp'n, Ex. 1 (Aff. of Trial Counsel), ¶1; Tr. of Plea Hr'g at 51.

More to the point, Rush makes no attempt whatsoever to connect her ineffective assistance of counsel claim to the Government's decision not to file a motion for a reduction based upon substantial assistance. To the extent Rush's allegations can be generously construed to assert that her counsel failed to sufficiently put Rush on notice of the possibility that the

11

Government would not move for such a reduction, Rush is unable to establish that any shortcoming in counsel's assistance in this regard caused her actual prejudice because, as set forth above, the Court independently advised her of this fact during an extended colloquy. Further, Rush's "vague and conclusory" reference to her counsel's purportedly "ineffective response to government denying sentence reduction" is likewise insufficient to allege ineffective assistance. *See Simms*, 730 F. Supp. 2d at 61. Assuming, *arguendo*, that Rush alleges that her counsel rendered ineffective assistance for failing to request the Court to compel the Government to file a § 5K1.1 motion, this argument again overlooks the critical fact that the decision to file a motion for departure pursuant to § 5K1.1 is within the sole province of the Government. What is more, the Court went to great lengths to expressly and repeatedly explain during the plea colloquy the fact that a decision by the Government not to file a § 5K1.1 motion is "unreviewable" and that, even if the Government decides in its discretion to file such a motion, the Court was under no obligation to grant it; Rush expressed nothing short of complete understanding of this fact. *See, e.g.,* Tr. of Plea Hr'g, at 38, 50-52, 62. She likewise acknowledged multiple times during her colloquy that she was satisfied with her trial counsel's services and that she had discussed with him all of the matters addressed in the plea agreement, including the issue of substantial assistance. *See*, *e.g.*, Tr. of Plea Hr'g at 6-7, 39.[5]

---

[5] The Court notes that Rush's reply brief specifically requests that the Court "review the Government's refusal to file [a] 5K1.1 motion." Firstly, the Court declines to construe this impromptu request for relief, which was made for the first time in a reply memorandum, as a proper motion. Second, for reasons already discussed, and because the plea agreement in this case imposes no obligations on the Government concerning the filing of a § 5K1.1 motion, the Court is in no position to "review" the Government's refusal to move for a § 5K1.1 reduction. Finally, even if the plea agreement had contained an agreement regarding the filing of a § 5K1.1 motion, Rush has made no showing that her alleged efforts to cooperate justified a downward departure. While "[a] district court may . . . grant relief if the government's refusal [to file a downward departure motion] breaches its agreement to file such a motion," *id.* (citing *In re Sealed Case No. 97-3112*, 181 F.3d 128, 142 (D.C. Cir. 1999)), the court need not inquire into

Against this record, Rush's elusive claim that her counsel was ineffective for failing to "secure and explain" terms of the plea agreement rings hollow against the firm presumption that her counsel rendered adequate assistance and exercised reasonable professional judgment.[6]

### 2. *Alleged failure of trial counsel to seek a downward departure based upon extenuating circumstances*

Second, Rush faults her counsel for failing, at the time of her sentencing, to "present extenuating family circumstances," which Rush contends justified a lesser sentence. Mot. to Vacate at 7. Rush's motion provides a detailed account of the unfortunate health-related difficulties facing Rush and her family, including her mother and son, as well as a description of the psychological trauma she continues to suffer as a result of physical and emotional abuse she suffered as a child. *Id.* This argument need not detain the Court for long, as Rush's assertion that counsel failed to present this evidence to the Court is wholly incredible in the face of the record. During sentencing proceedings, Rush's counsel argued for a variance pursuant to 18 U.S.C. §

---

the government's decision "'unless the defendant makes a substantial threshold showing that the government acted in bad faith.'" *United States v. Shah*, 263 F. Supp. 2d 10, 33 (D.D.C. 2003), *aff'd*, 453 F.3d 520 (D.C. Cir. 2006) (quoting *United States v. Alegria*, 192 F.3d 179, 187 (1st Cir. 1999)). Here, Rush makes no such threshold showing.

[6] Also buried among Rush's briefing in support of her first ground of alleged ineffective assistance is a claim that her counsel was ineffective for "neglecting to protect [her] by way of sealing case records and information from public sector, civilians, and government employee access." Mot. at 5. While not entirely clear, Rush seems to imply that the sealing of her case would have facilitated an opportunity for greater cooperation with the authorities. However, for the reasons stated herein, Rush has not – and could not – explain how this alleged "failure to seal" materially affected her conviction or sentence. Further, a decision as to whether to file a motion to seal, especially in view of the strict standard governing the sealing of court filings (and the presumptively public nature thereof), is most certainly a "strategic decision that falls well within the range of reasonable professional assistance." *Hoover-Hankerson v. United States*, 792 F. Supp. 2d 76, 84 (D.D.C. 2011). Finally, on a separate but related note, the Court observes that in her reply brief, Rush requests that the Court "seal all case documents to protect the future safety of the Defendant." Pet'r's Reply. The Court shall not construe this as a proper motion to seal. To the extent Rush seeks the sealing of one or more documents in this matter, she must file a separate motion which must, at a minimum, be made in accordance with the Local Rules of this Court and address each of the factors set forth in *United States v. Hubbard*, 650 F.2d 293 (D.C. Cir. 1980).

3553(a)[7] and in support thereof, described in detail Rush's own medical issues, as well as those of her mother and son. *See* Tr. of Sent. Hr'g at 26-28. Further, the Court itself specifically referenced Rush's physical and psychological abuse and adopted all facts contained within the presentence report, including those regarding such abuse. *See id*. at 12, 36. Accordingly, Rush has not – and could not – show prejudice resulting from her counsel's allegedly inadequate efforts to seek a reduction in her sentence based upon extenuating circumstances.

### 3. Alleged "deficient performance" of trial counsel

Rush's third ground for relief is that her counsel was ineffective because of "deficiency in performance." Mot. to Vacate at 10. Rush's briefing in support of this third ground identifies – in passing and without any meaningful explanation or argument – a handful of complaints about the adequacy of her counsel's representation. Once again, these complaints are stated in such "vague and conclusory" terms that they are woefully inadequate, whether considered together or independently, to overcome the strong presumption that her trial counsel's representation was adequate and reasonable. *Simms*, 730 F. Supp. 2d at 61. Simply by way of example, Rush alleges that her counsel was "deficient" for "ineffectively investigating and applying case law to protect [her]" and for ineffectively "determining strategies best suited to argue alternative sentencing under the plea agreement." Mot. to Vacate at 10. However, Rush neglects entirely to articulate what sort of investigation or strategies her counsel should have undertaken, or what case law was overlooked or misapplied. Because Rush's sweeping attacks are wholly unsupported by specifics, they should be summarily dismissed. *See United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (noting that "[s]ummary disposition" of an ineffective assistance

---

[7] 18 U.S.C. § 3553(a) instructs judges, in determining a defendant's sentence, to consider several enumerated factors, in addition to the Sentencing Guidelines and the policy statements of the U.S. Sentencing Commission, including, *inter alia*, the "history and characteristics of the defendant."

of counsel claim "may [ ] be appropriate where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in h[er] motion.").

Also thrown into the mix of "deficient performance" allegations is a claim that Rush's trial counsel provided ineffective assistance when he failed to disclose to her a pending investigation by the District of Columbia Bar into his law firm's alleged misappropriation of trust funds. Mot. to Vacate at 10. While Rush provides no further detail in this regard, the Government's submissions make clear that the investigation (which ultimately resulted in a finding that the misappropriation was the result of neither reckless nor negligent conduct by counsel, *see* Gov't Opp'n, Ex. 2 (R&R of Hr'g Comm. No. Nine (Apr. 13, 2012))), concerned a dispute and clients entirely unrelated to Rush. Rush provides no explanation as to how this separate investigation affected her own case beyond an abstract allusion to the "personal effects" necessarily felt by counsel – an explanation simply too nebulous and speculative to defeat the strong presumption that her counsel's representation was adequate and reasonable. *See Simms*, 730 F. Supp. 2d at 61; *Taylor*, 139 F.3d at 933. *See also Morrison*, 98 F.3d at 622 ("[S]ummary denial of a §2255 motion is appropriate when the ineffective assistance claim is speculative.") (citation omitted).[8]

---

[8] Also among the hodgepodge of allegations contained within Rush's briefing on her third ground are two claims that are duplicative of claims asserted elsewhere in her briefing, and likewise addressed elsewhere in this Memorandum Opinion. First, Rush alleges that counsel was ineffective for permitting "the case to be filed unsealed." Mot. to Vacate at 10. This claim, which replicates that asserted under her first ground, lacks merit for the same reasons stated *supra*, Part III.A.1, n.6. Second, Rush alleges that her trial counsel "denied [her] post-conviction assistance." *Id.* This claim is subsumed within Rush's broader fourth ground, which asserts, *inter alia*, that both trial and appellate counsel failed to provide adequate "post-conviction assistance," and shall therefore be addressed with that claim *infra*, Part III.A.4.

15

### *4. Alleged failure of both trial and appellate counsel to advise of post-conviction options for legal recourse*

Finally, Rush asserts that both her trial counsel and appellate counsel, a Federal Public Defender appointed by the Court after sentencing, failed to provide her with an adequate understanding of post-conviction processes for legal recourse. Mot. to Vacate at 10, 12. Rush conclusorily asserts that her trial counsel failed completely to provide post-conviction assistance; she alleges with only slightly more specificity that her appellate counsel "never presented options on grounds to appeal" but rather advised her to withdraw her appeal and "led [her] to believe there was no legal recourse available." *Id*. at 12. Once more, Rush's claims are flatly rebutted by the record. Throughout the plea hearing, the Court made every effort to discuss with Rush the particulars of her appellate rights, including those she was waiving by pleading guilty, and Rush unequivocally indicated her acknowledgment and understanding each time. *See*, *e.g.*, Tr. of Plea Hr'g at 10-12, 45-46, 52-54. Further, Rush's trial counsel expressly stated to the Court that he had explained Rush's limited rights to challenge her conviction or sentence. *See id*. at 53.

Furthermore, pursuant to her plea agreement, Rush expressly waived her statutory rights to appeal her sentence or the manner in which her sentence was determined. *See* Plea Agreement ¶¶ 16-18. It is axiomatic, therefore, that neither trial counsel nor appellate counsel could have acted unreasonably by failing to advise Rush to pursue appellate rights that she did not have. And Rush can identify no prejudice she suffered from receiving accurate advice regarding her appellate rights. Correspondingly, appellate counsel did not act ineffectively in advising Rush that she should withdraw her notice of appeal in light of the terms of her plea agreement. Indeed, at the time she withdrew her appeal, Rush herself acknowledged in a sworn declaration that her appellate counsel had "fully informed [her] of the circumstances of her case" and that she was

"completely satisfied" with her attorney's services.  *See* Gov't's Mot. to Vacate, Ex. 3 (Mot. for Voluntary Dismissal, *United States v. Rush*, No. 11-3053 (D.C. Cir. 2011)).

## B. No Certificate of Appealability Shall Issue From This Court.

When the district court enters a final order resolving a petition under 28 U.S.C. § 2255 that is adverse to the petitioner, it must either "issue or deny a certificate of appealability." Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 11(a).  By statute, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Such a showing demands that the petitioner demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For the reasons set forth above, the Court concludes that Rush has failed to make that showing in this case, and, accordingly, no certificate of appealability shall issue from this Court.  To the extent Rush intends to file an appeal, she must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22.

## IV.  CONCLUSION

For all of the foregoing reasons, the Court shall DENY Rush's [28/34] Motion to Vacate.  Furthermore, no Certificate of Appealability shall issue from this Court.  To the extent Rush intends to file an appeal, she must seek a Certificate of Appealability from the United States

Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22. An appropriate Order accompanies this Memorandum Opinion.

        /s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge